IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN BECKER, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-0627-K |
| | § | |
| ROD BORDELON, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Ken Ford's Motion to Dismiss Plaintiff's First Amended Complaint, Defendant Howard Smith's Motion to Dismiss Plaintiff's First Amended Complaint, and Defendant Rod Bordelon's Second Motion to Dismiss, all filed March 30, 2012.  Also before the court are Defendants Bordelon, Smith, and Ford's respective Dispositive Motions Regarding Qualified Immunity, all of which were filed June 29, 2012.  The court has reviewed and considered the motions, responses, replies, Plaintiff's pleadings, and the applicable law.  For the reasons that follow, all of the motions are **granted,** and Plaintiff's claims are **dismissed with prejudice.**

### I.    Factual and Procedural Background

The facts alleged by Plaintiff are as follows:  Plaintiff Stephen Becker, M.D. ("Becker") is a board certified and licensed physician practicing in the state of Texas. Defendant Howard Smith, M.D. ("Smith") was from 2007 until April 2010 the Medical

1

Advisor to the Commissioner of the Texas Division of Worker's Compensation. Defendant Ken Ford, Jr., M.D. ("Ford") was from 2004 until March 2010 the Assistant Medical Advisor to the Commissioner of the Texas Division of Worker's Compensation. During the relevant time period, Defendant Rod Bordelon ("Bordelon") was the Commissioner of the Texas Division of Worker's Compensation.

More than 75% of Plaintiff's medical practice was devoted to patients believed to have suffered workplace injuries, and accordingly a large portion of the professional fees collected by Plaintiff were paid for by Texas worker's compensation insurance carriers. The Division of Worker's Compensation ("DWC") administers the Texas worker's compensation system.  The DWC creates and maintains a "Designated Doctors List" ("DDL") for consultation and independent examination of the medical diagnosis and care being received by persons seeking or using worker's compensation benefits. Texas law provides that only doctors that meet certain standards may apply for and receive admission to the DDL.  Doctors who are on the DDL are assigned cases from the DWC.

Upon request from an insurance carrier, an employee, or the Commissioner, the Commissioner may order a medical examination to resolve any issue regarding the employee's injury, medical, or return to work status.  A Designated Doctor is assigned from the DDL to do the examination and produce a report.  The DWC uses an "Experience Matrix" ("Matrix") to determine which patients are referred to a particular

Designated Doctor.  Designated Doctors check boxes to correlate with their applicable medical experience and practice, so that patients are matched with appropriately trained and experienced Designated Doctors who are qualified to evaluate their treatment and condition.  The Matrix referrals are automatically made on a rotating basis.  Plaintiff was a Designated Doctor on the DDL.

Between July 2008 and early 2009, Plaintiff and Smith had an ongoing disagreement regarding Plaintiff's ordering of an MRI for a patient.  Then, in February 2009, Plaintiff was informed that he would only be renewed on the DDL for six weeks instead of the usual two years.  He alleges that Smith later called him and told him he was being removed from the DDL for practicing "bad medicine."  In March 2009, Plaintiff's Matrix designations were changed so that he would only receive referrals for an abbreviated subset of patients, and excluded him from receiving referrals for neck, back and spine patients, which is his specialty.

In late March 2009, Plaintiff's attorney wrote to Smith to complain about the changes to Plaintiff's Matrix designations and the decision to extend his DDL renewal for only six weeks instead of two years.  Plaintiff then received a letter dated April 9, 2009 that notified him Smith had ordered a Medical Quality Review of three patients Plaintiff had evaluated for the DWC, and for two patients where he served as the consulting doctor ("Patients 1-5").  Plaintiff sent the five patient files as requested.

Despite the pending Medical Quality Review, Plaintiff was restored to his full Matrix in April 2009.  Because his Matrix designations had been previously altered, he was added to the bottom of the referral list, which Plaintiff contends caused him to receive fewer referrals than he would otherwise have received.

On July 20, 2009, Ford sent Plaintiff a letter stating that Smith and the Medical Quality Review Panel("MQRP") had recommended sanctions against him.  In response, Plaintiff requested a formal hearing before the Texas Department of Insurance's Enforcement Division.  Smith and Ford refused to refer Plaintiff's case to the Enforcement Division, and no finding of mismanagement or misconduct by Plaintiff was ever made.  Plaintiff continued to practice with his fully restored Matrix privileges, including receiving rotational referrals from the DDL, and no suspension or other restrictions were placed on his Matrix.

Plaintiff did not have a formal hearing before the Enforcement Division, Defendants then filed a formal complaint with the Texas Medical Board ("TMB") regarding Plaintiff's care of Patients 1-5.  Plaintiff alleges that this complaint was improper since no disciplinary action was ever taken against him by the DWC.  After reviewing the files of Patients 1-5, the TMB determined that Plaintiff's treatment of these patients did not fall below the accepted standards of medical care, and thus dismissed the complaint for lack of cause on December 14, 2009.  In spite of this finding, Defendants still did not refer the MQRP matter to the Enforcement Division.

4

Eventually, the MQRP "investigation" was closed by Defendant Bordelon in January 2011, but the MQRP never provided a summary of the reasons for the investigation.

Plaintiff contends that none of the above should have happened because beginning in February 2008, Bordelon approved a plan calling solely for random selection of health care provider audits, and that he did so in consultation with the office of the Medical Advisor – i.e., Smith's office. The investigations of Plaintiff and other doctors undertaken by Smith and Ford, via the Medical Advisor's office, were contrary to this policy. Plaintiff alleges that Bordelon allowed these investigations to occur even though the doctors were not randomly selected, in violation of the February 2008 plan. Plaintiff further asserts that these actions may have been taken at the request of "third parties," specifically insurance companies, who wanted to eliminate him from the DDL because he would order necessary but expensive diagnostic testing, which increased insurance carrier costs. Because the insurance carriers are not allowed to deny claims or discuss tests ordered for DDL patients, Plaintiff alleges that these third parties worked through Defendants to remove him from the DDL and impair his ability to practice medicine before the DWC and the TMB.

Plaintiff filed suit against Defendants in March 2011, and asserts claims under 42 U.S.C. § 1983 for denial of property and liberty interests without due process of law. He also claims that Defendants conspired to violate his civil rights. Defendants now move for dismissal of Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6),

5

arguing that he has not stated a claim upon which relief could be granted.  All three Defendants were sued in their individual capacities, and Bordelon was also sued in his official capacity.  Bordelon also moves to dismiss the official capacity claims against him for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  All of the Defendants also move for summary judgment under Fed. R. Civ. P. 56, asserting that they are entitled to qualified immunity.

## II.      Applicable Legal Standards

Although the court concludes that all of Defendants' motions should be granted, their motions rely upon various procedural mechanisms, as well as the specialized doctrine of qualified immunity.  The applicable legal standards relating to the motions are described below.

### A.      Rule 12 Motions

Under Fed. R. Civ. P. 12(b)(1), a case must be dismissed for lack of subject matter jurisdiction where the court lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Assn. of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5ᵗʰ Cir. 1998).  Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), *quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly,* 550 U.S. at 556. The court is responsible for determining whether the plaintiff has stated a legally cognizable claim that is plausible, and permits the court to infer more than the mere possibility of misconduct. *Iqbal,* 556 U.S. at 679. Plausibility does not require facts showing a probability that the plaintiff will prevail. *Twombly,* 550 U.S. at 556. Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003).

### B.   Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial.

*Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### C.   Standards for Qualified Immunity

To determine whether an official is entitled to qualified immunity, the court follows a two-part inquiry.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  First, the court must determine whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right.  If no such violation is made out, no further inquiry is necessary.  *Id.*  The second prong of the test consists of two separate inquiries: 1) whether the allegedly violated constitutional right was clearly established at the time of the incident, and if so, 2) whether the conduct was objectively reasonable in light of then clearly established law.  *Tarver v. City of Edna,* 410 F.3d 745, 750 (5th Cir. 2005).  A right is "clearly established" when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right at issue, and that his or her actions are unlawful in light of pre-existing law.  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Stefanoff v. Hays County,* 154 F.3d 523, 525 (5th Cir. 1998).

The relevant question is whether a reasonable public official could have believed that his or her conduct was lawful in light of clearly established law and the information

her or she possessed. *Anderson,* 483 U.S. at 641.  If public officials of reasonable competence could disagree on the illegality of the conduct, immunity should be recognized. *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir. 1995).  Conversely, an official is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent that the conduct, when undertaken, would be a violation of the right at issue.  *Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir. 1994).  The question of whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.  *Porter v. Epps,* 659 F.3d 440, 445 (5th Cir. 2011), *citing Saucier,* 533 U.S. at 202.  For an official to surrender qualified immunity, pre-existing law must "truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith,* 117 F.3d 866, 871-72 (5th Cir. 1997).

### III.    Bordelon's Rule 12(b)(1) Motion

Bordelon argues that Plaintiff's claims against him in his official capacity must be dismissed because sovereign immunity will not permit such a  suit in federal  court unless sovereign immunity is waived.  Plaintiff agrees that his official capacity claims should be dismissed.  The court dismisses these claims.

## IV.    Rule 12(b)(6) Motions

Plaintiff asserts two due process claims under section 1983: 1) that he has a property interest in being on the DDL, and 2) that he has a liberty interest in being free from medical reviews that could be injurious to his career.   He also claims that Defendants further violated section 1983 by conspiring to deprive him of his civil rights.

### A.    Procedural Due Process – Property Interest

Defendants argue that Plaintiff has no property interest or "right" to inclusion on the DDL, and they argue that participation in the worker's compensation system is a benefit rather than a right.   They state that the statutes related to the DDL do not contain "rights creating language," and no property interest is created therefrom.   They also rely on several court decisions holding that there is no enforceable property interest in inclusion on the ADL, of which the DDL is a subset.

42 U.S.C. § 1983 provides a cause of action against any person acting under color of state law who deprives a person of "rights, privileges, or immunities secured by the Constitution and laws."   *Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Equal Access for El Paso, Inc.,* 509 F.3d 697, 702 (5th Cir. 2007), *cert. denied,* 555 U.S. 811 (2008).   Due process is implicated when the state or its agents deprive a person of a protected liberty or property interest.   *Board of Regents v. Roth,* 408 U.S. 564 (1972); *Lee v. Texas Workers' Compensation Commission,* 272 S.W.3d 806, 817 (Tex. App. – Austin 2008, no pet.).   Due process requires notice and an opportunity to be heard at a meaningful time and in a

meaningful manner.  *Matthews v. Eldridge,* 424 U.S. 319, 335 (1976); *Lee,* 272 S.W.3d at 817.

The procedural component of the due process clause does not protect everything that might be described as a "benefit."  *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005).  To have a property interest in a benefit, a person must have more than an abstract need, desire, or unilateral expectation of it.  *Id.; Roth,* 408 U.S. at 577. One must have a legitimate entitlement to a benefit, and that benefit is not a protected entitlement if government officials may grant or deny it in their discretion.  *Id.*  Property interests are created and defined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms.  *Roth,* 408 U.S. at 577; *Clark v. Wilson,* 625 F.3d 686, 690-91 (10th Cir. 2010), *cert. denied,* 131 S. Ct. 2884 (2011).

To determine whether a particular statute creates a constitutionally protected property interest, we ask whether the statute or implementing regulations place "substantive limitations on official discretion."  *Lee,* 272 S.W.3d at 817, *citing Olim v. Wakinekona,* 461 U.S. 238, 249 (1983).  Official discretion is limited by statutory language that is "explicitly mandatory," meaning that if certain predicates are present a particular outcome must follow."  *Lee,* 272 S.W.3d at 817, *citing Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463 (1989).  Where administrators have unfettered discretion as to which eligible individuals receive benefits, no constitutionally protected property interest exists.  *Roth,* 408 U.S. at 567.

11

Defendants argue that the automatic referrals given to doctors on the DDL are benefits those doctors receive, but whether or not a doctor is on the DDL is, by statute, discretionary.  *See* Tex. Lab. Code § 408.1225; 28 Tex. Admin. Code § 180.21 (*repealed September 1, 2012, amended and recodified in part* at 28 Tex. Admin. Code §§ 127.100-110).  Texas law gives the Commissioner and the MQRP panels discretion to approve or deny admission to the DDL.  28 Tex. Admin. Code § 180.21(h); Tex. Lab. Code § 408.1225(b).  The applicable statutes further provide the Commissioner with authority to delete, suspend, restrict, or sanction doctors on the DDL.  *Id.*  Defendants further rely on several cases where courts found that placement on the ADL was not a protected property interest.  *See, e.g., Algilani v. Tex. Workers' Comp. Comm.,* 2006 WL 2035648 (N.D. Tex. 2006); *Weldon v. Tex. Workers' Comp. Comm.,* 2005 WL 3312284 (N.D. Tex. 2005); *Fogel v. Tex. Dept. of Ins. Div. of Workers' Comp.,* 2007 WL 1115256 (S.D. Tex. 2007).  Although the parties and the court have found no case law addressing the issue of property rights in DDL status, Defendants argue by extension that the DDL is a subset of the ADL, and therefore there is also no property right to participation on the DDL.

Plaintiff's primary response is that DDL doctors have property rights because once they are placed on the DDL they automatically receive referrals on a rotating basis, can obtain employee medical records without a signed release, their reports are entitled to "presumptive weight," they are protected from undue influence, and they enjoy special

statutory immunity from suit.  Tex. Lab. Code § 408.0041(b), (c),(f); Tex. Lab. Code § 413.054(a).   Receipt of all of these benefits is dependent upon the doctor being on the DDL - a status made discretionary by the statute.  Tex. Lab. Code § 408.1225(b).  The court finds that Plaintiff did not have a property interest in his status as a DDL doctor.

Plaintiff also argues that he was deprived of his alleged property interest without proper procedural due process because Texas law provides for certain procedures when a DDL doctor is sanctioned.  This argument fails because, as the court notes above, being on the DDL does not amount to a property right subject to due process protection.  Even if a property right were implicated, Plaintiff does not plead that he was sanctioned by the MQRP or the Commissioner.  He states that the MQRP had "recommended" sanctions against him, but that the sanctions were never pursued or imposed, and that he fully continued his practice on the DDL without suspension or restriction.  For both of these reasons, Plaintiff has further failed to state a claim for a denial of due process.  This claim must be dismissed.

### B.    Liberty Interest – Freedom from Review

Plaintiff also asserts that Defendants denied him the liberty of practicing his chosen profession without due process of law by subjecting him to improper medical reviews.  This claim is based upon a legally erroneous assertion – that his right to practice medicine included participation on the DDL.  There is no protected right to

inclusion on the DDL.  Further, state law expressly authorizes the monitoring, review, and sanction of DDL doctors by the Commission.  Tex. Lab. Code §§ 408.1225(b), 413.002(b), 413.044.  Although it is undisputed that Plaintiff's DDL status was altered for a short period of time, he was continuously free to practice medicine, even if his practice as a DDL doctor was temporarily curtailed.

Plaintiff cannot maintain a due process claim based upon alleged stigmatization that occurred because he was being investigated.  To establish a liberty interest, a party must show not only that they were stigmatized, but that they were stigmatized in connection with a denial of a right or status recognized by state law.  *Moore v. Otero,* 557 F.2d 435, 437-38 (5th Cir. 1977), *citing Paul v. Davis,* 424 U.S. 693 (1976); *Fogel,* 2007 WL 1115256 at *4.  Inclusion on the DDL is not a right, and Plaintiff thus cannot base this claim upon any purported stigmatization that flowed from being subjected to a medical review or investigation, or the temporary alteration of his DDL status and matrix designations.  Plaintiff has failed to plead either a protected liberty interest in either his participation on the DDL or being free from the investigations that a DDL doctor may, by statute, be subjected to.  This due process claim must also be dismissed.

## C.    Conspiracy

Finally, Defendants have moved to dismiss Plaintiff's claim of conspiracy to violate his civil rights.  As Defendants have noted in their reply briefs, Plaintiff has not responded to this aspect of the motion.  Therefore, this claim has been abandoned, and

14

it must be dismissed.  *See Black v. North Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir.

2006) (party's failure to pursue claim beyond her complaint constituted abandonment);

*Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir. 1991) (party is considered to

have abandoned claim if he inadequately briefs the issue).

## V.      Dispositive Motions Based on Qualified Immunity

As the court articulates above, Plaintiff's section 1983 claims are dependent upon

his ability to show that being on the DDL was a clearly-established constitutional right.

*Saucier,* 533 U.S. at 201; *Porter,* 659 F.3d at 445.  While it is undisputed that Plaintiff's

DDL matrix designation was altered for a period of time, the court has determined that

even when the facts contained in the  summary judgment record are viewed in the light

most favorable to Plaintiff, they do not support his assertion that either his briefly

diminished DDL matrix status or the medical review proceedings led to the loss of a

federally-protected right or property interest.   For Plaintiff to prevail, the Texas

legislature would need to create a property right that they have not yet created.  Because

Plaintiff has not raised a material fact issue regarding a violation of his constitutional

rights, which is the first part of the qualified immunity analysis, no further inquiry is

necessary, and qualified immunity applies.  *Id.*

Even if Plaintiff had successfully raised a genuine issue of material fact whether

his constitutional rights were impaired by Defendants (which he has failed to do), he

still must set forth evidence suggesting raising a fact issue regarding the second prong of

the qualified immunity defense.  He must show that the rights alleged to have been violated were clearly established in 2008-09, the time frame of the accused conduct, and that the actions of the Defendants were objectively unreasonable against that legal backdrop.  *See Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998) (second prong of qualified immunity test is better understood as two separate inquiries – whether the rights were clearly established at the time of the incident, and if so, whether the conduct of the defendants was objectively reasonable in light of that then clearly established law).  He is required to provide evidence raising a genuine issue of material fact whether a reasonable public official in the same situation would have realized or understood that his conduct was unlawful at the time the actions were taken.  For an official to lose his qualified immunity, pre-existing law must truly compel the conclusion that his alleged conduct violates federal law under the circumstances.  *Pierce,* 117 F.3d at 871-72.

The court has found that when the facts are viewed most favorably toward him, the conduct complained of by Plaintiff still does not constitute a violation of an established constitutional right.  Because the purported violations have not been established as being contrary to law, no reasonable official standing in the shoes of the Defendants would have realized or understood their actions were legally improper, and Plaintiff cannot successfully defeat qualified immunity.  Defendants also meet the second prong of the qualified immunity test - that their actions were objectively reasonable.  Defendants are entitled to summary judgment based upon the doctrine of

qualified immunity.

### VI.    Conclusion

For the reasons stated herein, Defendants' motions are **granted,** and Plaintiff's claims are hereby **dismissed with prejudice.**   Judgment will be entered by separate document.

**SO ORDERED.**

Signed December 10th, 2012.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE